Your Honor, this case on the docket 2-14-1060, Illinois State Toll Highway Authority, plaintiff's affidavit, v. International Brotherhood of Teamsters, Local 700, defendant, Kelley, arguing on behalf of the defendant, attorney, Mr. Paul L. Chaney, arguing on behalf of the plaintiff's affidavit, attorney, Mr. Tina T. Hanson. Good morning. Good afternoon. Oh, good afternoon. Wow. How the day has fallen. Ms. Chaney, are you ready to proceed? Really? Minded, indeed. Good afternoon, Your Honors. May it please the Court, Nicole Chaney on behalf of the International Brotherhood of Teamsters, Local 700, the defendant, appellant in this matter, who I'll refer to as a union. First and foremost, I'd like to thank you for granting our request for oral argument, and I would like to take this time to request the five minutes I have allocated for my rebuttal. You will have your rebuttal. Thank you. Today the union is requesting that this Court reverse the circuit court order vacating an arbitration award on two grounds. The circuit court vacated, first, that the arbitrator had exceeded his authority under the contract, and second, that the award violated public policy. Are you now conceding that this was an arbitrable, I can never say that, issue? I'm sorry? That this issue was subject to arbitration? Your Honor, the union has always been of the position that this case was arbitrable. That was something that I believe the Tollway argued in its reply brief, but it was not raised prior to the appeal. So it is our position that it was at all times an arbitrable matter, both substantively and procedurally. So we're asking that this Court reverse the circuit court's order on two grounds. I just have a quick question. Are you arguing at all in your brief or now that the Tollway forfeited this argument at all? Yes, Your Honor. It's our position that the Tollway waived the arbitrability issue, specifically by not raising it prior to the appeal. As you review the record, you'll note that there was no cross appeal filed on the arbitrability issue. There was not, in the Tollway's reply brief, they made two arbitrability arguments. One of those arguments was not even raised at the circuit court level, and the other one that was raised at the circuit court level had not been raised prior to the date of the arbitration hearing. So it was our position at the hearing that it had been waived at that point. Was it raised on the date of the hearing? Yes, Your Honor. And it was addressed by the parties? It was raised by the Tollway on the date of the hearing. It was addressed by the arbitrator, and rulings on arbitration or on arbitrability are favored. Where there's any sort of ambiguity, it favors arbitrability. The arbitrator did ultimately evaluate their argument and deemed that it was arbitrable under the contract. In our standard of review, in reviewing that arbitration decision is what? In reviewing the arbitration decision, we'll first, as I've already indicated, it's our position that this court shouldn't even review that particular argument. However, if you don't find the waiver argument compelling and choose to review that, the standard of review for an arbitration arbitrability determination, the Tollway has contended. They've cited one case in their brief from this district stating that that review is de novo. However, we would argue that that particular case was on substantive arbitrability issues, and so it's distinguishable here because the concerns that they raised were on procedural arbitrability. We would argue that that is actually within the purview of the arbitrator and is owed the same deference as other arbitration decisions, so that his arbitrability determination on the procedural points would only be able to be vacated if they exceeded their authority or were violative of public policy. Okay, moving on. How is this a grievance since there was no grieved party? Well, there's a couple of different points that I'd like to make on that. The first being that in the context of policing a collective bargaining agreement, it's commonplace for the union to initiate grievances. This was a class-based grievance, which means that it dealt with a number of different employees that were covered by the collective bargaining agreement, and so it's what we would call a class action. The initiation by the union is supported by the collective bargaining agreement, which states that under the grievance and arbitration mechanism, any difference, dispute, or disagreement under the contract between the employer and the union or the employee is subject to arbitration. It then outlines a number of steps that are followed for the processing of grievances with respect to individualized grievance. And as far as the class action grievances, those are submitted in a somewhat different way. They're submitted at the second step, we call it. As far as the practice in common industrial situations such as this, it is frequently accepted that the union is permitted to initiate grievances, both in the arbitral case law and also it was specifically identified in this collective bargaining agreement and as a matter of past practice between the parties. But the requirement is that you have to bring this grievance within so many days, correct? Is it 10 days? There is a requirement that it be filed within time limits as designated under the collective bargaining agreement. This would be what is referred to as an ongoing grievance. There's no particular incident date because it's something that was occurring on more than one occasion with respect to more than one individual. So there would be no deadline to filing this? That would be something that would be argued before the arbitrator and there would be evidence provided to him or her in the way of making that determination. And that's why it's our position that that procedural guideline is something that's within the arbitrator's purview to make that determination. However, since that had never been raised at that point, there's nothing in the record to indicate whether this grievance was submitted within the timelines or according to the steps identified in the agreement. So just turning briefly to the primary arguments, it's our position that we're entitled to read the statement and confirmation of the award because arbitrator Samiri acted within the scope of his authority in interpreting the collective bargaining agreement and the party submissions and he derived the essence of his award from the language of the collective bargaining agreement. There's a longstanding presumption in the Illinois Supreme Court and the appellate courts as well upholding arbitration awards and providing deference to those awards. And in fact, in reviewing awards, there's a presumption that the arbitrator did not exceed his authority. And so in order to vacate an award, the challenger has to provide clear and convincing evidence that the award was improper. But isn't there some language also in the collective bargaining agreement, I guess it's Article 3, that gives management, which would be the toll highway I assume, certain powers to regulate issues that they might be faced with on either a case-by-case basis or in this case they were concerned about violations of the sick day policies? Don't they have the right under the management rights to do something in addition to the actual language of the collective bargaining agreement? Your Honor, I believe what you're referring to is the management rights clause that allows management to act with all authority that is not specifically modified or narrowed under the provisions of the agreement, the remainder of the agreement. It's our position that Section 11.2a, which was at issue in this case that we proceeded before the arbitrator with, we asked him to render a finding as to whether the tollways management rights were affected by the language of Section 11.2a. And in that section, it indicated that for more than two days, an employee is obligated to provide medical documentation certifying his or her ability to return to work and explaining the reason for his or her absence. Now here, and that kind of goes to the standard that I was articulating, when we look to the scope of the arbitrator's authority here, we look to the collective bargaining agreement and the issues that were submitted to him. The issue that was submitted to him was whether the tollway had been violating this provision by requiring employees to submit notes when they were absent for two days or less. Here, the tollway had given its garage managers the discretion to require it. They had total discretion as to when, if, from whom, or under what circumstances they would require it. There was no consistency with which they were required. But does that statement in the arbitration agreement, is the trial court expressed some concern? Does it give a blanket prohibition against ever asking for a doctor's note for anyone who's been absent less than two days? It's our position that it's not a blanket prohibition. Why not? The reason being is that the tollway does have alternative ways that they could ensure that an employee is able to return to work safely. For absences of two days or less, those, as a practical matter, are not likely to be more serious illnesses that would affect a driver's ability to safely perform his or her duties. And in the event that the tollway did have concerns about that, they would be able to send them out on a fitness for duty, which would be different than requiring a medical note. And I think that that goes to the second argument, which is that there's no grounds under the public policy doctrine to vacate the award or avoid enforcement of the award. First, because the interest that the tollway has identified here, the policy against preventing ill or fatigued motor truck drivers as identified in the CFR, there's nothing indicating that their practice was actually in aid of that policy. So the whole reason behind this policy is for safety purposes. I mean, it has nothing to do with maybe somebody's taking consistently a number of days off and they want to see if they're faking. That's actually our position, is that that's why the tollway was requiring the notes in this case. And the fact that they have asserted the public policy exception here is unavailing because the evidence at the hearing, the evidence before the arbitrator demonstrated that they had been requiring it to police what they viewed as sick time abuse. So the garage manager would ask an employee to provide a note explaining why they had been absent because they viewed it as them being absent for a reason other than using bona fide illness. So why is it a problem that the Toll Highway Authority would want to monitor the use of sick days? I understand that the CBA gives certain days you're entitled to X amount and they can be carried over and they can be used at your discretion. But if they're being used improperly, what's the problem with the Toll Highway Authority trying to regulate that? Well, I would contend that globally it may not be an issue. It may be within their right to do that. However, that right is limited by the language of the collective bargaining agreement that was negotiated by the parties to say that for more than two days they certainly can require the employee to provide such documentation. However, as a secondary matter, I think it undermines their public policy argument to say now, after the award has already been entered, that all of a sudden they're concerned with the ability of the employee to return to work when the evidence suggested that what they were really concerned about was the abuse of sick leave. And that's supported by the evidence at the hearing. One note I believe that the arbitrator made in his award was that there was evidence presented that an employee was actually threatened with discipline for not providing that note. Well, that's the language of Article III management rights that the Toll Highway Authority has the ability to discipline, suspend, and discharge for cause. Wouldn't abuse of sick day privileges constitute a forecast? Certainly it would. And that's what the arbitrator said is that if the Tollway is concerned about this being an abuse of sick time, then they certainly still are able to discipline employees for cause. Well, how can they ever establish cause if they can't monitor it in some way? Well, frankly, Your Honor, I'm not sure how to suggest that they would do that. If an employee has a pattern, for example, I think that that would allow them to then render some sort of discipline against them. And then they would, of course, have to demonstrate that before an arbitrator or at a grievance hearing or something of that nature. However, the whole point here is that that is within their rights for absences of more than two days. For two days or less, they're not permitted to require that documentation. And I think that that goes to the public policy concern that I identified in my brief, which is that there is a policy against employers having unfettered discretion to require documentation from employees beginning into their medical history. And that is, I would say, why the Tollway is public policy that they identified as not dominant necessarily. They haven't provided a reason why it is dominant over other policy interests at issue here. So you need a note if it's over two days, correct? Yes, Your Honor. Or you need a doctor's, something for a doctor. Do you need it automatically or is that a summer pass? What does the CBA say about two days or less specifically? The CBA only states that for more than two days there is an obligation. For two days or less, there is no such obligation identified in the CBA. So why didn't the arbitrator make this up out of whole cloth then? I'm sorry, I don't understand. Why didn't the arbitrator, I mean, how did the arbitrator just make this up? I mean, the CBA says something specifically for two days or more than two days. Two days or less, I'm the arbitrator, I'm saying I'm going to put a provision in this contract that you don't need it. Well, the arbitrator is not empowered to put a provision into the contract. What he's asked to do and what he's hired to do by the parties when they jointly select him to resolve this dispute is to identify what the party's rights are under the contract. And here under the contract, the employer is permitted and the employee is obligated to provide that note for more than two days. For two days or less, no such obligation exists, and that's what the arbitrator stated, is that the parties had the ability to bargain this language, and he indicated he's entitled to believe that they meant what they said and they said what they meant, and they said for more than two days it's required. For two days or less, there's no such obligation. And to require and to permit the employer to require such documentation is a violation of Section 11.2a. Thank you. Thank you very much. You'll have an opportunity for rebuttal. Great. Thank you. Ms. Hanson. Good afternoon, and may it please the Court. I'm Assistant Attorney General Christina Hanson on behalf of the Illinois State Toll Highway Authority, the APALE in this case. I'd like to highlight that this arbitration arose, there wasn't a specific agreed employee in this arbitration. Rather, the union brought the arbitration and the evidence presented was that on at least one occasion, a manager threatened to take disciplinary action against an employee if he didn't bring in a doctor's note for a medical documentation explaining the reason for his absence after being absent for two days. When did the tollway first object to arbitrability? It's my understanding that the tollway objected at the arbitration hearing. Is that forfeiture by objecting late? Is that a late objection? Well, the requirement with respect to issues of substantive arbitrability, the requirement is that it be raised before the arbitrator because the preferred method is that the arbitrator first decide the issue. And then the issue is preserved if it's raised at the arbitration. It's preserved for a court challenge. And that's what the tollway did here. They raised it at the arbitration proceeding and then they raised it in the circuit court and we've raised it on appeal. Did the union object to timeliness of the argument at the arbitration hearing? That's not in the record. I'm not aware of that fact. There is no bystander's report of the hearing, correct? There is not. There is no record. The arbitration record is not in the appellate court record. And so what resulted from the arbitration proceeding is an overly broad, essentially a declaration prohibiting the tollway from requesting medical documentation for those sick leave absences of two days or less. The arbitrator's award specifically provides for absences of two days or fewer, the tollway may not require medical documentation or other proof acceptable to the tollway by certifying a bargaining unit employee's ability to return to work and explaining the reason for the absence. The circuit court vacated that arbitration award, vacated the blanket prohibition portion of that arbitration award, and there were two reasons for the circuit court's decision. The first is that the arbitrator exceeded his authority in reaching that decision, and the second reason is that to the extent of the blanket prohibition, the award as stated and as interpreted, the award as interpreted by the arbitrator, violates public policy because it doesn't permit the tollway to require medical documentation in circumstances where the tollway feels it's necessary to meet its state and federal regulatory guidelines to ensure that its employees are fit for duty. Is this public policy that they are violating, or is it public interest? It's framed as a public policy analysis, and the public policy, there's two components to the public policy analysis, and the first is that there has to be a well-defined and specific public policy. There has to be a well-defined and dominant public policy. And we assert that ensuring that it's commercial, that drivers of commercial motor vehicles are fit, are free from, are not ill or fatigued and fit to take the road, is well established in state and federal regulations as well as the case law. It's not just that there's a general public interest at stake, but there are requirements that the tollway ensure that its drivers are fit to operate commercial motor vehicles. Why can't they just put them on that, what is it, fit for work or fit for test? Why can't they do that if there is some suspicion of a problem? It's allowed by the arbitration agreement. To not require medical documentation but to put the employee through some testing. It would be permissible under the specific language of the arbitration agreement for the tollway to use other means of ensuring that its drivers are fit. But it seems that the simplest way to do that is to require some type of medical documentation. And that is, you know, in the form of a doctor's note or some other proof acceptable to the employer. So, you know, it could be something simpler than a doctor's note. But the tollway has an obligation to ensure that its employees are fit for duty. And the arbitration award, as written, takes away. Well, where's the nexus between less than two days in this public policy argument? Well, the nexus exists to the, let me back up for a second. The circuit court vacated the arbitration, the blanket prohibition portion of the arbitration award in order that the tollway cannot request medical documentation unless it has good cause, a bona fide concern regarding an employee's fitness for work. And that establishes the nexus between the act of the tollway's request for medical documentation and fulfilling its obligations, the public policy of fulfilling its obligations to ensure that its drivers are fit. Your argument is that the trial court is fulfilling the nexus requirement based upon putting in a term to the collective bargaining agreement that's not there. And where is it saying the collective bargaining agreement that within three days, there has to be good cause shown in order to ask for a doctor's note? I'm sorry, I didn't understand the question. Well, you know, the argument is, you know, that the, you know, in the trial court, the trial court brought this argument that the arbitrator exceeded his authority by basically putting in a term in the contract. But then on the other hand, the trial court then put in another term in the contract. The trial court took the arbitrator's ruling and added another term to it, saying, you know what, you know, you could ask for it, but you have to have good cause. Where is that in the contract? Well, I think that just highlights the issue with having this sort of broad declaration that the tollway is prohibited in any circumstances from requiring medical documentation for those shorter two- or one-day sick leave absences. There are circumstances within that that could arise that violate public policy. Certainly there could be an employee who takes two or one day of sick leave time that the employer has concerns about their fitness to return to work. And under the arbitration award as written, the tollway cannot request medical documentation in those circumstances. Aren't your Mets, sometimes, isn't there like a privacy right to certain Mets? I mean, they can just ask anybody to give them a doctor's note as to what Mets they're taking? I'm not sure. I don't know the exact confines of what can be required. Certainly there are some medications that operators of commercial motor vehicles are required to tell their, I believe, are required to disclose if they're taking them. Right. There are other methods to go about what you're trying to get to, are there not? Other than asking someone for a medical note under two days? There's nothing specific in the record addressing what other methods the tollway would have for addressing the issue. But, you know, this is a way of obtaining that information. And, you know, to the extent that an employee feels that it's unfairly requested, they certainly could take it through the grievance process and grieve that incident. But here there's just a blanket prohibition prohibiting the tollway from requesting medical documentation, even in cases where, you know, that's the way to, that's the proof that they need to allow an employee that's shown up for work to, you know, to let them work. Your opponent has argued in her brief that the arbitrator's ruling was basically that the inclusion of one thing in a contract is the exclusion of another thing. I mean, that's a maxim of construction, is it not? It is, but it's not really applicable to the language in this contract because in order to make that argument of construction, the union essentially changes the focal point of the language. The language in the collective bargaining agreement itself is if an employee is absent due to illness for more than two days, he or she must present medical documentation. In order to say that there's a two-day grace period, you have to shift the focus of that language as a benefit to the employer, that the employer can require or discipline an employee who doesn't provide medical documentation for absences for more than two days. The problem with that is that the only time the employer can ask for it is if you've been gone for three days. I mean, that's the way the arbitrator read it. I'm sorry. That's the way the arbitrator read it, I believe, is that if you read this as, if I'm Joe employee sitting on the job and I get my handbook and I read this collective bargaining agreement, I say to myself, well, a reasonable interpretation is if I'm gone two days, I don't have to bring a doctor's note. If I'm gone three days, I better bring one in when I come back to work. You don't have to, that employee would not have to bring a doctor's note as a matter of course, but if there's some reason that the employer sees fit to require a doctor's note for shorter absences. So it has to be requested by the employer. Yes, for absences of two days or less, a doctor's note would have to be requested by the employer. How about two days or more? In those circumstances, the provision provides that if the employee is absent, he or she must bring in the note. I'm just saying if I'm Joe employee out there reading this as a reasonable person, that I'm thinking that the employer's not even going to be able to ask me to bring a note because they've put in this contract that if I'm gone three days, I have to bring a note, but if I'm gone less than two days, they can't ask me for a note. But it doesn't say they cannot ask for a note. It simply says that you're not required, that you don't have to bring one, you don't have to show up to work with a note in hand. The fact that we're having this argument and that you have an arbitrator who ruled one way and you have a judge that ruled another way, it seems to me that maybe the argument could be made that reasonable minds could differ on the interpretation of this collective bargaining agreement. Do you agree or disagree with that? I think the way that the provision is worded with the obligation on the employee, the arbitrator in essence was adding a provision to the collective bargaining agreement, which is expressly prohibited in Section 12 of the arbitration agreement, which provides that the arbitrator shall decide only the grievance submitted by applying only the express language of the agreement and will not add to the collective bargaining agreement. But didn't the trial court judge add to the collective bargaining agreement? In the form of? In his ruling? Well, the circuit court order in his ruling essentially tries to take into account the spirit of the arbitration award and address the arbitration award and incorporate the spirit of that decision into the order. But isn't that outside of this limited review that we talk about? I mean, the trial court gets an arbitration. You guys have decided that you're going to send any discrepancy regarding this agreement to an arbitrator, not to the court. So, I mean, the review in the trial court is extremely limited. And so you're saying that the trial court in this extremely limited review can throw out the arbitrator's ruling but then somehow put a term in to maintain the intent of their ruling? I think what the arbitrator did was carve out an exception to the ruling for those situations in which the tollway managers have a legitimate concern about an employee's. You mean the trial court did? The trial court carved out an exception to the arbitrator's decision, to the arbitrator's award to the extent that it violated public policy and took away to the extent of the blanket prohibition that prohibited the tollway from requiring medical documentation, even in those cases where the tollway has an obligation to ensure that its drivers are fit for duty. So the whole basis behind this request is due to fitness for duty. It has nothing to do with somebody trying to goof with the system. Under both, under the arbitration word as well as under the circuit court's order, the tollway is not permitted to require medical documentation to police this sick leave policy. Isn't there just as much danger for this public policy problem if somebody works his or her entire shift but also has another job and is fatigued and maybe has an accident? Fatigue isn't easy to pick up. So if the public policy is we want to make sure that everybody is safe, the public is safe and we're safe, couldn't you make an argument similar to the one you're making, that every two weeks you have to provide a doctor's notice saying that you're safe to work? If the public policy is the real issue here? Well, certainly the ‑‑ presumably if a certain situation arose under the management rights provision, the tollway does have the authority to require some type of, if they have concerns about a certain employee's fitness for work, they certainly do have a means of assuring that they're not sending somebody out to perform that isn't fit for duty. I guess my question is, you're talking about two days, I'm talking about two weeks. What's the difference? If the public policy issue is the primary concern of requesting this information, why can't you just say that every single employee has to give us a doctor's note every two weeks saying that they're safe to be on the road? What's the difference? The difference is that that's not tied to a specific incidence in which concerns are raised. Well, what's the specific incident here? In the context of this arbitration, there was no specific incident, and that's why we submit that the arbitration award is overly broad and that it creates this blanket prohibition where the employer should be able to look at these situations on a case-by-case basis. And to the extent that there is disagreement, that can be raised through the grievance procedure. An employee who feels that they were asked for a doctor's note when they should have been can bring a grievance and it can be addressed in the context of that employee so that there is no blanket prohibition and there's not a conflict of this order that limits the tollway's rights without putting it in the context of a specific incident. The trial court's judicial review of an arbitration award is extremely limited, is it not? It is. What can you point to that the arbitrator disturbed that would allow the trial court to review the way it did? The arbitrator's award is disturbed only if there's fraud, corruption, partiality, misconduct, mistake, or failure to submit the question to arbitration. What did this arbitrator do that allowed the trial court to disturb that arbitration award? The standard is that the court can disturb an arbitration award if the arbitrator has exceeded the scope of his authority. And the arbitrator's authority is determined by the contract. And the collective bargaining agreement specifically provides that the arbitrator can decide only the grievances submitted by applying only the express language of the contract. So he applied the law outside of the contract, is what you're saying? And he added a provision to the contract. This two-day grace period during which the tollway cannot require medical documentation is essentially a new term to the contract. That's how he interpreted the contract, correct? Is that how he interpreted the contract? Yes. Anything further? The tollway and the union had a disagreement over the interpretation of this contract, correct? They had a disagreement. Well, the union took the position that the tollway could not require medical documentation for those shorter sick leave absence. So there's a disagreement over the interpretation of that provision of the contract. So, I mean, Article 12 of the CBA talks about the grievance and arbitration procedure, and it seems to apply in the very first paragraph that if you have a disagreement over the interpretation of the contract between the tollway and the union, that then it is subject to grievance and arbitration. Separate and apart. I mean, I know what you're talking about, you know, the steps and the agreement delay and all that. But would you admit that or concede that at least Article 12 is ambiguous? Article 12 provides broad authority for an arbitrator to decide issues between the union and the employer. But it limits it. It limits that provision to the extent that it sets forth the steps that show that there must be an aggrieved employee who files a timely grievance. Why did they say if there's a problem between the employer and the union or the employees? I mean, you know, the language of this doesn't really bear out what you're saying. I mean, I understand the language you're pointing to does, the steps and the aggrieved person and all that. But the preamble to that basically says that if you have a problem between the employer and the union or the employees, it seems to give the union the option to bring something. I submit that procedurally the union wouldn't, the way that the provision is written, that broad authority in the preamble is limited by the language. Such differences shall be settled in the following manner and sets forth the steps by which grievances are resolved. And those steps require an aggrieved employee who brings their specific issue through the grievance process. And ultimately the union can take up an arbitration on behalf of that employee. So are you back to the fact that you don't think this was arbitrable? That there was a substantive, yes, that we raised a substantive arbitrability challenge. All right. Anything further? No. Thank you. Thank you. Thank you. You're back up, Ms. Chaney. Ms. Chaney, doesn't this, your interpretation of this below two days really tie the hands of the toll road? No, Your Honor, it's our position that it really doesn't tie the hands of the toll road. And that may be a compelling position if the tollway had not agreed to the contract, they agreed to this language. They ratified and signed off on this being a part of the collective bargaining agreement to which they were bound. There is final and binding language in the collective bargaining agreement as well saying that an arbitrator's award will be final and binding as to his or her determination on the merits and the rights of the parties. There are a couple of things that I would like to address with respect to the arbitrability issue. Counsel indicated that it's not in the record whether the union objected at the time of the hearing. And I think that that's why we would contend that procedural arbitrability is more apt to be decided by the arbitrator at that hearing. Counsel has indicated that this is a substantive objection on behalf of the tollway. We would contend that it's not a substantive objection, a substantive arbitrability objection. And the reason being is that a substantive arbitrability objection would be that section 11.2, the issue, is not subject to arbitration because there's no requirement in the contract or no indication in the contract that that is available for the parties to resolve by way of arbitration. Here what they're talking about is whether the procedural elements were met. And so for that reason, we would argue that their cited case law is not pertinent and is actually distinguishable on that point. As to Justice Burke made a mention of a point that reasonable minds can differ on the interpretation of the contract, I would certainly agree with that. Reasonable minds can differ on the interpretation of the contract. And I would argue that a different interpretation of the contract, even if the circuit court did find that he did not, even if the circuit court judge, excuse me, found that he didn't agree with what arbitrator Sumeri interpreted in the contract, that's not sufficient to meet the standard for vacator. I would also like to direct Your Honor's attention to a case out of the Second District. In the Hurricane Graphics case, this court interpreted the Uniform Arbitration Act standard for vacating an arbitration award. But to my knowledge, this court has not yet spoken on the standard for vacating an arbitration award in a collective bargaining context, which is what is at issue here. Under the Uniform Arbitration Act, however, the standard is still very, very narrow for vacating awards. It's even more deferential than appellate review of trial court decisions. And if an arbitrator's construction is reasonably possible, then the arbitrator's award should be upheld. You know, where the arbitrator's award was within the submission, the issue submissions and the submissions of the party, where a full and fair hearing is rendered on those issues, and where the arbitrator enters an award on the issues, the award cannot be set aside under the Uniform Arbitration Act. I would contend that there is significant case law to support a finding that the common law standard applicable here in the collective bargaining context is even more narrow than that applied under the Uniform Arbitration Act. It's even more deferential to an arbitrator. And so for that reason, since Arbitrator Sumeri rendered his interpretation of the award after a full and fair hearing, it was a reasonable, it meets the standard of having been reasonable interpretation. It does not, clearly there is not any individual other than the tollway, I would contend, and the circuit court judge who could say that a fair and reasonable, all fair and reasonable minds would differ as to that interpretation. And since they can't meet that standard, it would not be permissible to vacate it under the Uniform Arbitration Act, and certainly not under the common law. As to whether the arbitrator added language into the contract, we submit that he did not. He simply read a term that was already in there. As Justice Burke also pointed out, the circuit court judge did add language into the contract. He indicated that the tollway could require documentation for bona fide reasons or for good cause shown. I think that is probative of the fact that he substituted his judgment for that of the arbitrator. And that renders, may I just finish? That renders the language in the contract meaningless. That key language for more than two days under the circuit court judge's order, that language has absolutely no effect. There was some mention in the trial court that the public policy argument may be moot as there's a collective bargaining agreement. Is that the case? Your Honor, it's not in the record, but I can opine I do have knowledge to that. I just don't know if that would be permissible. Well, it was mentioned in the trial court, so I don't know what the basis for the mention was. There is a new collective bargaining agreement, in effect, and the language remains. As to the public policy, may I just add one more thing? Counsel indicated that there are circumstances that could arise. And I would say that that is indicative of the speculative nature of the tollway's public policy concern and undermines the idea that the award actually violated the public policy because there's nothing in the record to suggest that it did. And that's one of the requirements of the test to vacate an award under the public policy exception is that the award actually violates the public policy cited. Thank you. Ms. Cheney and Ms. Hanson, thank you so much for your time here today and your very intelligent arguments. We will run your decision in due course. In the meantime, the court is in a brief recess. Thank you, ladies. Safe travels back. Thank you. Have a good afternoon.